No. 20,317.

City of Aurora *v.* Harold C. Powell, et al.

(383 P. [2d] 798)

Decided July 29, 1963.

Mr. BERNARD V. BERARDINI, Mr. GEORGE B. LEE, for plaintiff in error.

Messrs. HAYUTIN and HAYUTIN, for defendants in error Harold C. Powell and Pauline M. Powell.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

SILVER STATES SAVINGS & LOAN ASSOCIATION has made no appearance in this court. We refer to the other parties as Aurora and Powells.

On March 29, 1961, Aurora filed its complaint seeking to obtain for street purposes from Powells, by eminent domain proceedings, title to the easterly 20.5 feet of Lots 37 and 38, Block 22, Aurora, Adams County, Colorado. Powells, on April 11, 1961, filed their "RESPONSE" and put in issue several allegations of the petition.

The record before us does not fully disclose the respective positions and contentions of the parties prior to the trial before a jury. Presumably Aurora was in possession of the lands sought to be condemned and the parties were agreeable to having the jury determine:

(1) The value of the property taken by Aurora;

(2) The amount of damages, if any, to the residual lands not taken.

Trial, confined to these two questions, was had before the Honorable Hal Chapman, County Judge of Otero County, sitting as District Judge in the Seventeenth Judicial District, Adams County, Colorado.

On November 16 and 17, 1961, testimony was taken and the jury instructed, arguments completed and the jury retired to consider its verdict on the 17th. The jury was instructed to return a sealed verdict; whereupon Judge Chapman returned to Otero County to there perform the duties of his office.

On November 20, 1961, with the Hon. Jean J. Jaco-

6

bucci, one of the district judges of the Seventeenth Judicial District, presiding, the jury presented its sealed verdict. By its verdict the jury found the value of the property taken to be $8,225.00, and found the damage to the residual property not taken to be $7,500.00.

The record shows that on November 20, 1961, a "MINUTE ORDER OF COURT" was entered showing that the sealed verdict was opened and read and the following:

"IT IS ORDERED BY THE COURT that verdict is received. 10 days are granted in which to file motion for a new trial. Jury is excused."

Following this episode the clerk of the court made an entry in the "Judgment Docket" showing Aurora to be "Judgment Debtors," Powells to be "Judgment Creditors," the nature of relief to be "Judgment by Jury," "damage to residue of respondents' property is $7500.00."

Aurora filed no motion for new trial within the ten days allotted by Judge Jacobucci. The record does not disclose that any proceedings were had in the case after November 20, 1961, until December 13, 1961, at which time Aurora filed its "MOTION FOR NEW TRIAL ON ISSUE OF DAMAGES [the $7500.00 item only] Rule 59 C.R.C.P."

Urged as reasons for granting a new trial is that there is no evidence to support the finding of $7500.00 damages to the residue of the property.

On January 3, 1962, Powells filed their MOTION TO STRIKE Aurora's MOTION FOR NEW TRIAL, for the reason that the motion was not filed within the time allotted by the rules of civil procedure or the order of court.

On April 2, 1962, Judge Chapman returned to the place of trial and, after hearing arguments and being fully advised of the clerk's minute orders and entries in the "Judgment Docket" and "Judgment Book—civil order Book," found: "* * * that a Judgment, in accordance

with the verdict heretofore rendered by a jury, was entered on Book 46-A, page 6, on November the 20th, 1961; and that the Motion for New Trial was filed December the 13th, 1961, which is over and beyond the ten days granted to the Petitioner by the Court on November 20th to file a Motion for New Trial; and, therefore, the same having not been filed within the stipulated time of the Court, the Judgment having been entered thereof on November 20, 1961, the Motion for New Trial will be *stricken and denied.*" (Emphasis supplied.)

Aurora is here by writ of error seeking reversal of the "judgment of the trial court and remanding the cause herein for a new trial on the question of damages to the remainder."

We conclude that no judgment has been entered in the case.

Aurora sought to acquire title to certain lands owned by the Powells. Neither the judge nor the clerk has undertaken to invest Aurora with title or to divest the Powells of title to any lands.

 The verdict of the jury is not a general verdict, but rather a special verdict in a special statutory proceeding. The jury, a special jury of freeholders, as provided by C.R.S. '53, 50-1-7, was instructed that:

"* * * You are concerned only with determining the amount of just compensation (as defined in these instructions) to be paid the respondent—owners *in this case.*"

It had only one function to perform, and that was to determine from the evidence and its view of the premises:

1. The value of the property actually taken.

2. The damage, if any, to the residue of respondents' property.

 The jury made these findings of fact. Such findings do not constitute a judgment. The verdict is not a judicial determination, but rather a finding of fact which the trial court may accept or reject and utilize in formu-

lating a judgment. To constitute a judgment, there must be a judicial act.

C.R.S. '53, 50-1-11, governing eminent domain proceedings, provides: "The court, upon such verdict, shall proceed to adjudge and make such order as to right and justice shall pertain, ordering that petitioner enter upon such property and the use of the same, upon payment of full compensation as ascertained. Such order with evidence of such payment shall constitute complete justification of the taking of such property."

The record before us does not disclose any compliance with this statute. None of the issues presented by the parties for determination have been adjudicated. The only pronouncement by the court is, "the Motion for New Trial will be stricken and denied."

In *McKnight v. Ballif*, 45 Colo. 138, 100 Pac. 433, the court said: " * * * The findings of a court do not constitute a judgment, and a statement that a judgment was rendered cannot supply the place of the judgment itself. * * * ."

In *People v. County Court*, 26 Colo. 478, 58 Pac. 591, it is said: "* * * The verdict itself is not a *judicial determination of a fact*. It is without virtue until judgment has been rendered upon it." (Emphasis supplied.)

In *Cooper, et al., v. American Central Ins. Co.*, 3 Colo. 318, it is said: "A judgment is the sentence of the law pronounced by a court of competent jurisdiction, as the result of proceedings instituted. It is a judicial act, and to be valid must be pronounced by the *court,* at a time and place appointed by law, and in the form it requires. * * * ."

In *Pierce v. Pierce*, 97 Colo. 40, 46 P. (2d) 748, 15 R.C.L. 569, §12, the court said: "* * * 'A judgment is the law's last word in a judicial controversy.' * * * ."

■ Apparently the trial judge concluded that the following language, "Judgment upon the verdict of a jury shall be entered forthwith by the clerk," of Rule 58(a),

R.C.P. Colo., authorized the clerk to enter judgment. We do not so construe the rule. A judgment is a judicial act; where the judge has adjudicated nothing, there is no judgment.

Reading the rule in its entirety we find no sanction for such construction. The rule provides that upon a special verdict (as here), the court shall direct the appropriate judgment. Other provisions indicate that the court shall direct the entry of a judgment. The clerk's entries are administrative and not judicial.

The verdict in this case was "received" by Judge Jacobucci. It has never been approved by anyone.

Judge Chapman, so far as the record discloses, never approved or disapproved the findings of the jury. Had he given consideration to the verdict, he might have disapproved the same insofar as it awarded damages in excess of $4950.00, being the maximum amount of damage to which any witness testified.

Entry of a judgment for the amount of the verdict would constitute approval thereof; entry of a judgment for a lesser amount would constitute *pro tanto* approval of the judgment. He could reject the verdict in its entirety. In other words, judges, not juries, make judgments.

Clearly, the verdict of the jury was not a general verdict. It found no issues for or against any party—it found value and damage, and it was the duty of the court to take further steps and to adjudicate all issues properly presented by the parties, and to make or cause to be made in writing a record truly setting forth the judicial determination of issues presented for adjudication.

Until such proceedings are had, there is no judgment and there is nothing before us for review.

The writ of error is dismissed and the cause remanded to the trial court with directions to accept or reject the verdict of the jury, to grant Aurora time to file a motion for a new trial or such other motions as it may deem ad-

10

visable, and to proceed, consistent with the views herein expressed, to a final adjudication of the issues presented.

MR. JUSTICE SUTTON and MR. JUSTICE PRINGLE do not participate.