Antonio PASSAMANO, Plaintiff–
Appellant,

v.

TRAVELERS INDEMNITY COMPANY,
an Illinois corporation; National Car
Rental System, Inc., a Delaware corpo-
ration; and North–West Leasing Cor-
poration, a Colorado corporation, De-
fendants–Appellees.

No. 91CA0003.

Colorado Court of Appeals,
Div. III.

Dec. 19, 1991.

Rehearing Denied Jan. 16, 1992.

Certiorari Granted Sept. 14, 1992.

Fish & Coles, D. Bruce Coles, Denver, for plaintiff-appellant.

Montgomery, Green, Jarvis, Kolodny & Markusson, John T. Van Voorhis, Denver, for defendants-appellees.

Opinion by Judge METZGER.

In this action for declaratory relief and damages, plaintiff, Antonio Passamano, appeals from the summary judgment entered for defendants, North–West Leasing Corporation, National Car Rental System, Incorporated, and Travelers Indemnity Company. We affirm.

Plaintiff, visiting in Colorado, rented an automobile in Vail from North–West Car Rental, a licensee of National. He executed a standard form Rental Agreement

wherein he accepted Collision Damage Waiver and declined Personal Accident Insurance. As required by § 10–4–705(1), C.R.S. (1987 Repl.Vol. 4A), automobile liability and no fault coverage were provided for him via a policy issued by Travelers to North–West.

Uninsured motorist coverage was neither discussed nor offered during the rental transaction. However, the Rental Agreement recited that uninsured motorist coverage is not provided "unless [it is] required to be provided by applicable law and cannot be rejected."

The next day, while driving his rental car, plaintiff was involved in an automobile accident caused by an uninsured motorist. He and his passenger sustained serious injuries.

Section 10–4–609(1), C.R.S. (1987 Repl. Vol. 4A) provides that uninsured motorist coverage must be offered in any automobile or motor vehicle liability policy, "except that the *named insured* may reject such coverage in writing." (emphasis added) North–West maintained an ongoing insurance policy with Travelers which provided automobile liability and no fault coverage for the renters of North–West's vehicles. However, North–West, as the designated "named insured" of this policy, had exercised its option in writing to reject the uninsured motorist coverage which Travelers had offered.

Plaintiff submitted claims for his injuries pursuant to this insurance policy between North–West and Travelers. Travelers paid him personal injury protection benefits, but denied his claim for uninsured motorist benefits, citing North–West's previous rejection of that coverage.

Plaintiff filed an action for declaratory relief and damages against Travelers, National, and North–West, contending that the liability insurance and no fault provisions in the Rental Agreement rendered the Agreement a contract of insurance between him and North–West. He argued that he was, in reality, the "named insured" under this policy for purposes of accepting or rejecting uninsured motorist coverage. Since he had not rejected uninsured motorist coverage, he asserted that he was entitled to damages.

Alternatively, he contended that North–West's waiver of uninsured motorist coverage on behalf of its customers was contrary to public policy and the legislative intent of the uninsured motorist statutes and was unconscionable.

Finally, he asserted that the Rental Agreement unconscionably failed to disclose that uninsured motorist coverage had been rejected and was unavailable.

The trial court granted defendants' motions for summary judgment, finding that no uninsured motorist coverage existed or was required to be provided by the terms of the rental agreement.

## I.

Plaintiff first contends that the automobile Rental Agreement constituted a contract of insurance by virtue of which he was the named insured and that the trial court erred in ruling to the contrary. In our view, the trial court did not err.

An insurance policy is a contract which should be interpreted consistent with well-settled principles of contractual interpretation. *Chacon v. American Family Mutual Insurance Co.*, 788 P.2d 748 (Colo.1990). Thus, the rights of the parties to an insurance policy are contractual in nature, and are measured by the reasonable and natural construction of the terms and conditions of the policy. *Hansen v. Barmore*, 779 P.2d 1360 (Colo.App.1989).

In interpreting insurance contracts, the terms used in the policy are to be given their meaning according to common usage; courts are not at liberty to make a new contract between the insured and the insurer. *Kane v. Royal Insurance Co.*, 768 P.2d 678 (Colo.1989).

Generally, leasing a vehicle from a car rental agency creates a bailment contract for the mutual benefit of the parties. *Davis v. M.L.G. Corp.*, 712 P.2d 985 (Colo. 1986). A bailment is a delivery of personal property by one person to another in trust for a specific purpose, with an express or

implied contract that the property will be returned or accounted for when the specific purpose has been accomplished or when the bailor reclaims the property. *Christensen v. Hoover*, 643 P.2d 525 (Colo.1982).

■ The language used in the Rental Agreement demonstrates that it is not a contract of insurance but is, instead, a bailment. The agreement plainly provides: "This is an Agreement between you and the Company to *rent you* a motor Vehicle." (emphasis added) Immediately above the signature line, the form contract states: "I have read the terms and conditions on both sides of this *rental* agreement and agree thereto. *Renter's* signature _____." (emphasis added) These terms are consistent with those used in a rental contract; they are not the terms found in contracts of insurance.

Section 10–1–102(7), C.R.S. (1987 Repl. Vol. 4A) defines insurance as "a contract whereby one, for consideration, undertakes to indemnify another or to pay a specified or ascertainable amount or benefit upon determinable risk contingencies...." Plaintiff relies on this definition to assert that Paragraph Five of the Rental Agreement constitutes an offer of "insurance" by North–West. This paragraph concerns the liability and no fault coverage provided for the renter's benefit via the Travelers/North–West insurance policy and provides in pertinent part:

5. LIABILITY INSURANCE

Authorized Driver is covered by an automobile liability insurance policy or qualified self-insurance arrangements ... for bodily injury or death (limits $100,000 each person, $300,000 each accident) and for property damage (limit $25,000) for each accident arising from use of Vehicle as permitted by this Agreement. Minimum Mandatory No Fault coverage as required by applicable law is also provided.

Plaintiff's argument fails, however, because North–West did not undertake to indemnify him within the statutory definition of "insurance." Since North–West was not self-insured, this provision merely noted that North–West would carry liability insurance covering plaintiff during his use of the vehicle. *See Nelson v. Strode Motors, Inc.*, 198 Colo. 366, 600 P.2d 74 (1979). It merely notifies North–West's renters that North–West has met the statutory requirement that automobile liability and no fault coverage exist. It does not transform the entire rental agreement into a contract of insurance.

Additionally, we note that the insurance policy between Travelers and North–West provides that North–West would be responsible for reporting any claims to Travelers. Travelers, in turn, was responsible for processing and paying the claims where appropriate. This further demonstrates that Travelers, not North–West, was the true insurer.

We conclude that neither this Rental Agreement, nor any portion thereof, constituted an automobile liability policy between North–West and plaintiff. Consequently, North–West was not required by § 10–4–609(1), C.R.S. (1987 Repl.Vol. 4A) to offer uninsured motorist coverage to him in its Rental Agreement, and the trial court was correct in so holding. Furthermore, since no contract of insurance existed, it follows that there was no "named insured." Therefore, plaintiff's assertion that he was the named insured of this nonexistent insurance policy between himself and North–West and that, as such, he was empowered to accept or to reject uninsured motorist coverage, is without merit.

II.

■ Alternatively, plaintiff argues that the trial court erred in determining that the Rental Agreement was not unconscionable in its format or in its failure to disclose to prospective renters that North–West had rejected uninsured motorist coverage. We disagree.

The provision in question states that: "[North–West] will not provide 'Uninsured Motorist' coverage 'Underinsured Motorist' coverage or supplementary 'No Fault' unless such coverages are required to be provided by applicable law and cannot be rejected."

### A.

The style and size of print, the color of ink, the use of transparent paper, and the placement of a provision on the reverse side of a document are factors to consider in determining unconscionability. *Davis v. M.L.G. Corp., supra.* The record here supports the trial court's determination that the contract was "easily read." Thus, the format of the provision was not unconscionable.

### B.

Nor was the wording of this provision unconscionable. Contract terms, particularly those in a transaction involving a consumer, will be found unconscionable when they defeat the reasonable expectations of the parties. *Davis v. M.L.G. Corp., supra.*

Here, plaintiff claims that the quoted provision was confusing and that it unconscionably failed to advise him of the unavailability of uninsured motorist coverage. However, we agree with the trial court's determination that a plain reading of this portion of Paragraph Five would lead a reasonable reader to conclude that uninsured motorist coverage is not provided. Also, plaintiff admits that he had the opportunity to read the contract and to ask any questions prior to signing it; his failure to do so does not render the agreement unconscionable.

### III.

Finally, plaintiff contends that the trial court erred in determining that North-West's rejection of uninsured motorist coverage for its vehicle renters did not violate public policy and the statutory intent of § 10-4-609, C.R.S. (1987 Repl.Vol. 4A) and that such rejection was not unconscionable. We disagree.

We recognize that the legislative intent underlying the uninsured motorist statutes is to permit insureds to protect themselves against losses caused by the conduct of negligent and financially irresponsible motorists. *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d 759 (Colo. 1989). However, the law contains no requirement that insureds carry uninsured motorist coverage. Insurers are obligated to offer such insurance, but it may be rejected in writing by the named insured. Section 10-4-609(1), C.R.S. (1987 Repl.Vol. 4A).

Travelers offered uninsured motorist coverage which North-West, the named insured of the policy, rejected in writing as it was empowered to do. Exercising a statutorily granted right cannot be an unconscionable act, nor can it violate public policy.

Plaintiff does not dispute that North-West is the only named insured in the North-West/Travelers insurance policy. Rather, plaintiff implicitly seeks an interpretation of the statute which would mean that, if the named insured of a liability policy is an automobile rental agency, the agency must always accept uninsured motorist coverage for the benefit of its renters. Such a reading of the statute is contrary to its specific terms.

The trial court correctly relied on *White v. Regional Transportation District,* 735 P.2d 218 (Colo.App.1987) (self-insurers need not provide uninsured motorist coverage in the absence of a legislative declaration) in its refusal to judicially legislate this interpretation. We reach the same conclusion. The issue is best left to the General Assembly for its consideration.

In summary, we hold that the automobile rental agreement here is not an insurance contract. By definition, then, plaintiff is not a "named insured" thereunder. Additionally, the leasing contract is neither unclear, ambiguous, nor unconscionable, and it does not violate the public policy of this state.

Accordingly, the summary judgment is affirmed.

CRISWELL and NEY, JJ., concur.